IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SARAH THURSTON,

        Plaintiff,

vs.                        Case No. 15-1378-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 19, 2014, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 12-21). Plaintiff alleges that she had been disabled since August 31, 2012 (R. at 12). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2017 (R. at

14).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 14).  At step two, the ALJ found that plaintiff had a severe
combination of impairments (R. at 14).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 15).  After determining plaintiff's RFC
(R. at 16), the ALJ found at step four that plaintiff is unable
to perform any past relevant work (R. at 19).  At step five, the
ALJ found that plaintiff could perform other jobs that exist in
significant numbers in the national economy (R. at 20).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 20-21).

## III.  Are the ALJ's RFC findings supported by substantial evidence?

Plaintiff argues that substantial evidence does not support
the ALJ's RFC findings.  Plaintiff also contends that the ALJ
failed to give proper weight to treating source opinions.

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material
inconsistencies or ambiguities in the evidence in the case
record were considered and resolved.  The RFC assessment must
always consider and address medical source opinions.  If the RFC

assessment conflicts with an opinion from a medical source, the
ALJ must explain why the opinion was not adopted.  SSR 96-8p,
1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20
C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530
n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson
v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

        In reaching his RFC determination, an ALJ is permitted, and
indeed required, to rely on all of the record evidence,
including but not limited to medical opinions in the file.
Wells v. Colvin, 727 F.3d 1061, 1071 (10th Cir. 2013).  When the
ALJ fails to provide a narrative discussion describing how the
evidence supports each conclusion, citing to specific medical
facts and nonmedical evidence, the court will conclude that his
RFC conclusions are not supported by substantial evidence.  See
Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July
28, 2003).  The ALJ's decision must be sufficiently articulated
so that it is capable of meaningful review; the ALJ is charged
with carefully considering all of the relevant evidence and
linking his findings to specific evidence.  Spicer v. Barnhart,
64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is
insufficient for the ALJ to only generally discuss the evidence,
but fail to relate that evidence to his conclusions.  Cruse v.
U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th
Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p

because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's

opinion, he must explain the weight he is giving to it.  Hamlin
v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must
provide a legally sufficient explanation for rejecting the
opinion of treating medical sources in favor of non-examining or
consulting medical sources.  Robinson, 366 F.3d at 1084.

     A treating physician's opinion about the nature and
severity of the claimant's impairments should be given
controlling weight by the Commissioner if well supported by
clinical and laboratory diagnostic techniques and if it is not
inconsistent with other substantial evidence in the record.
Castellano v. Secretary of Health & Human Services, 26 F.3d
1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2).  When a treating physician opinion is not given
controlling weight, the ALJ must nonetheless specify what lesser
weight he assigned the treating physician opinion.  Robinson v.
Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating
source opinion not entitled to controlling weight is still
entitled to deference and must be weighed using all of the
following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Plaintiff's treating physician, Dr. Ciccio, wrote a letter dated April 16, 2013, stating, in relevant part:

> Sarah has been a patient of this clinic since June 27, 2012…She also has juvenile rheumatoid arthritis which causes her to have chronic uveitis[1] in both eyes for the past several years…She has elevated eye pressure due to the inflammation and takes glaucoma medication in both eyes daily.  In regard to the chronic recurrent uveitis, these episodes can occur several times in one month and symptoms can last for several days.  Symptoms include light sensitivity, eye pain and blurry vision.  When Sarah has these episodes, her vision limits her ability to perform work.  Symptoms typically improve after a subtenon steroid injection. This limits Sarah's ability to work.  Sarah also suffers from ocular migraines that can happen several times a day and can last anywhere from 45 to 60 minutes.  There is no treatment for ocular migraines.

(R. at 255).

---

[1] Uveitis is a form of eye inflammation; warning signs come on suddenly and get worse quickly.  They include eye redness, pain and blurred vision.  The condition can affect one or both eyes.  Possible causes of uveitis are infection, injury or an autoimmune or inflammatory disease.  Uveitis can be serious, leading to permanent vision loss. (http://www.mayoclinic.org/diseases-conditions/uveitis/basics/definition/con-20026602; Nov. 16, 2016).

The ALJ stated that Dr. Ciccio did not identify any specific limitations, and further noted that plaintiff was previously able to work with these symptoms, which appeared to have been present since at least 2008.  The ALJ concluded that since Dr. Ciccio did not actually describe any of plaintiff's functional limitations or describe the alleged work limitations, this opinion was accorded little weight (R. at 18).

Dr. Ciccio prepared another report, dated May 30, 2014.  In that report, she indicated that plaintiff had 20/50 vision in both eyes with correction.  She went on to state the following:

> She has recurrent eye inflammatory disease due to rheumatoid arthritis.  Symptoms recurring eye pain, blurry vision, and floaters and she is not able to see well enough to work during these episodes.  The inflammation is frequent and requires glaucoma medication and steroid [not legible] injections frequently.

(R. at 317).

The ALJ indicated that Dr. Ciccio did not indicate why plaintiff was allegedly unable to work.  The ALJ further indicated that this opinion intrudes into an area reserved to the Commissioner under SSR 96-5p, and requires consideration of vocational factors outside of Dr. Ciccio's expertise.  Thus, the ALJ accorded little weight to this opinion (R. at 18).

On March 21, 2014, Dr. Latinis, a treatment provider, prepared a medical source statement-physical, which limited

plaintiff to only lifting or carrying 5 pounds, and further
stated that plaintiff could stand/walk for 2 hours and sit for 5
hours in an 8 hour workday.  Dr. Latinis also indicated that
plaintiff could not perform most postural and manipulative
maneuvers, and must avoid any exposure to environmental factors.
As a rationale for his opinion, he stated that plaintiff has
very limited vision and arthritis (R. at 258-259).  The ALJ
stated that most of these limitations are not supported by any
medical evidence, and are therefore accorded little weight (R.
at 19).

     The record also contains a medical opinion from Dr. Geis,
dated June 25, 2013, who reviewed the record (including the
April 2013 letter from Dr. Ciccio) and provided a physical RFC
opinion.  Dr. Geis found that plaintiff had some limitations due
to visual difficulties, and had a limited field of vision.  He
opined that plaintiff's near and far acuity and visual fields
are limited to frequent (R. at 76-78).  The ALJ found that his
limitations were credible, but did not appear to adequately
address the scope of plaintiff's vision and related problems.
Therefore, this opinion was only accorded some weight (R. at
19).

     The ALJ made RFC findings limiting plaintiff to medium
work, indicating that plaintiff cannot climb ladders, ropes, or
scaffolds; cannot work around unprotected heights or dangerous

moving machinery or operate heavy industrial equipment; should not be required to read or write in order to perform job tasks; cannot work in environments with glaring bright lights or strobing lights, but can work in an environment with lighting consistent with average stores or offices; should not be required to work with very small items, such as coins, requiring fine visual acuity or extensive, sustained depth perception on a constant basis; and would miss work once per month (R. at 16).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ indicated that the opinions of Dr. Ciccio intrude into areas reserved to the Commissioner, citing to SSR 96-5p. That ruling indicates that opinions from medical sources on issues reserved to the Commissioner must be evaluated based on all the evidence in the case record to determine the extent to which the opinion(s) is(are) supported by the record.  SSR 96-5p, 1996 WL 374183 at *3.

Although the ALJ alleges that Dr. Ciccio did not identify any limitations or indicate why plaintiff could not work, the court finds that the opinions of Dr. Ciccio are sufficiently specific regarding plaintiff's limitations.  Dr. Ciccio stated that the symptoms of uveitis include light sensitivity, eye pain and blurry vision, resulting in her not being able to see well enough to work (R. at 255, 317).

However, Dr. Ciccio also stated on April 16, 2013 that plaintiff's uveitis episodes can occur several times in one month with symptoms lasting for several days (R. at 255).  On the other hand, a medical record from another treatment provider, Dr. Smith, dated July 31, 2013 states that "she [plaintiff] notes a flare of her uveitis every month or so" (R. at 294).  This statement by plaintiff was noted by the ALJ in her decision (R. at 18).  This contradictory medical record provides a legitimate basis for discounting the opinion of Dr.

Ciccio that plaintiff's uveitis episodes can occur several times in one month and symptoms can last for several days.  The ALJ's RFC findings state that plaintiff would miss work once per month (R. at 16), which is consistent with the statement of plaintiff contained in Dr. Smith's medical records.  The ALJ also noted that plaintiff was previously able to work with these symptoms, despite their presence, since at least 2008.

The ALJ, although giving little weight to the opinions of Dr. Ciccio and Dr. Latinis, gave only some weight to the opinions of the state agency assessment by Dr. Geis, stating that those limitations do not adequately address the scope of plaintiff's vision and related problems.  Thus, the ALJ made RFC findings somewhere between the medical opinions in the record. When the ALJ is faced with conflicting medical opinions, and adopts a middle ground, arriving at an assessment between the two medical opinions without fully embracing either one, such an approach has been upheld and found not to be error.  Smith v. Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016).

Based on the conflicting evidence, and the conflicting medical and medical opinion evidence, the court finds no clear error in the ALJ's evaluation of the medical evidence or in the ALJ's RFC findings.  The court will not reweigh the evidence. The court finds that the balance of the ALJ's analysis of the medical opinion evidence regarding plaintiff's physical RFC is

supported by substantial evidence.  See Barnum v. Barnhart, 385
F.3d 1268, 1274 (10th Cir. 2004)(while the court had some
concerns about the ALJ's reliance on plaintiff's alleged failure
to follow a weight loss program and her performance of certain
household chores, the court concluded that the balance of the
ALJ's credibility analysis was supported by substantial evidence
in the record).

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is affirmed pursuant to sentence four of 42 U.S.C.
§ 405(g).

Dated this 22nd day of November 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge